IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES KENZELL CARTER, ) | |
| ) | Civil Action No. 7:20cv00409 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CORR. OFF. C. COLE, *et al.*, ) | By: Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Charles Kenzell Carter, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that the defendants subjected him to excessive force, failed to intervene when others used excessive force against him, and denied him adequate medical treatment, all while he was housed at the Wallens Ridge States Prison ("Wallens Ridge"). The defendants filed motions for summary judgment arguing that Carter failed to fully exhaust available administrative remedies before filing this action. After reviewing the evidence, the court agrees and will grant the defendants' motions.[1]

**I.**

Carter alleges that on April 9, 2020, during a transport within Wallens Ridge, defendants Correctional Officer ("C/O") C. Powers, C/O M. Rutledge, and C/O C. Cole

---

[1] Carter also filed a motion for reconsideration of the court's order denying his motion seeking preliminary injunctive relief. (*See* ECF No. 74.) By order entered April 7, 2021, the court denied Carter's motion after determining that Carter's allegations in his motion were not related to his claims in his underlying lawsuit, and that Carter had not established the requisite relationship between the injury claimed in the motion and the conduct giving rise to the complaint. (*See* ECF No. 68.) In addition, the court determined that Carter had not demonstrated that he is likely to suffer "actual and imminent" irreparable harm in the absence of the preliminary injunction. (*See id.*) The court has reviewed his motion reconsideration and concludes that the motion seeking preliminary injunctive relief was properly denied. Therefore, the court will also deny Carter's motion for reconsideration.

used excessive force against him while he was handcuffed behind his back and wearing a facemask. (*See generally* Am. Compl. pgs. 4–6 [ECF No. 18].) Carter also alleges that defendant Sgt. C. Caudill used excessive force when Caudill applied handcuffs in an "excessively tight" manner. (*Id.* at 9.) He claims that defendants Caudill, Unit Manager Jonathan Carico, Sgt. Coleman, and Lt. Bailey are liable as bystanders because they failed to intervene to assist Carter after his handcuffs had been applied too tightly and/or when other defendants used excessive force against him. (*See, e.g., id.* at 12.) Finally, he alleges that defendants Warden David Zook and Assistant Warden Anderson are liable as supervisors because they knew about complaints from Carter and other inmates concerning "other incidents," but did not "step[] up" to prevent those incidents from happening. (*Id.*)

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view

the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

The defendants argue that Carter failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). The court agrees and will grant their motion for summary judgment.

### A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust

all available administrative remedies, regardless of whether they meet federal standards; are plain, speedy, or effective; or if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

## B.

In support of the defendants' motions for summary judgment, Human Rights Advocate B. Ravizee provided an affidavit and a declaration; Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and Carter's grievance records related to the claims raised in this action. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Human Rights Advocate Ravizee

explains that the grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that the claims raised in this action are subject to the well-stablished requirements of OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint. According to OP 866.1, the first stage of the informal complaint procedure is for the inmate to verbally communicate his concerns to staff.[2] If the issue is not resolved or the inmate is not satisfied with the resolution, he generally must document his good-faith effort using an informal complaint form. Once an inmate files an informal complaint form, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of receipt of the informal complaint form, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If a response is not given to the inmate within 15 days of the informal complaint form being logged, the inmate may file a regular grievance, and he must attach the receipt of the informal complaint form to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner to allow time for staff to respond within the period allowed to file a regular grievance.

---

[2] The court notes that Human Rights Advocate Ravizee provided two different versions of OP 866.1. (*See* ECF Nos. 40-1, at 8-21 & 43-1, at 9-21.) The requirement of a verbal informal complaint before a written informal complaint is only in one of the versions provided. (*See* ECF No. 40-1, at 13.) The notes in that version indicate that the verbal informal complaint requirement was added to the OP in 2016. (*Id.*) Accordingly, the court will assume that the requirement was in place at the time of the incidents at issue in this action. But regardless of whether that provision was in place at the time of the incidents at issue, neither the court's analysis of Carter's exhaustion of available remedies nor the court's conclusion on this issue is affected.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days of its receipt, along with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman within five calendar days of receipt. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (to include any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

## C.

Carter alleges that defendants violated his rights on April 9, 2020. Carter submitted an

informal complaint on May 6, 2020 (three days before the grievance deadline), complaining that officers slammed him face first onto the floor on April 9, 2020. Carter did not complain about the medical treatment he received on April 9, he did not indicate that the treatment he received was in any way deficient, and he did not request any further medical treatment. He also did not mention that he had any trouble receiving informal complaint forms or that staff had refused to provide them. Unit Manager Carico responded to the informal complaint on May 14, 2020, and noted that medical staff had checked Carter after the incident, and that he was placed in restraints due to his disruptive behavior.

     Carter submitted a regular grievance on May 14, 2020 (eight days after he submitted the informal grievance), complaining that he was not seen by medical until he was taken off ambulatory restraints and that he suffered nerve damage to his left hand. He further complained that Unit Manager Carico was biased because he was a witness to what happened and told the other staff to place him in restraints. Carter requested monetary compensation due to nerve damage and a permanent scar, as well as requesting a transfer from Wallens Ridge because he feared retaliation. The grievance department received Carter's regular grievance on May 15, 2020, and reviewed it the same day. Because more than 30 days had passed since the date of the incident, Carter's regular grievance was rejected at intake because the filing period had expired. The rejected grievance was returned to Carter the same day. Carter states that he mailed an appeal of the determination to the Regional Ombudsman on May 23, 2020. The Ombudsman Services Unit received Carter's appeal on June 8, 2020. The appeal was rejected and returned to Carter because "the 5-day time limit for review has been exceeded." (Aff. of B. Ravizee Encl. C, Nov. 17, 2020 [ECF No. 40-1].)

It is clear from the record that Carter did not fully exhaust administrative remedies as to his claims in this action. Carter did not submit a regular grievance that was accepted at intake, as required by the VDOC's well-established grievance process, OP 866.1. Therefore, the court considers whether administrative remedies were "available" to Carter.

According to Human Rights Advocate Ravizee, inmates have access to request forms, complaint forms, and grievance forms in the housing units. (Ravizee Aff. ¶ 26.) Inmates can ask designated staff members for them. (*Id.*) If an inmate cannot get a form in his housing unit after asking for one, he may submit an offender request form to the grievance department to receive an informal complaint form. (*Id.*) During the relevant period, Carter did not submit an offender request form asking for an informal complaint form. (*Id.* ¶ 27.) According to Human Rights Advocate Ravizee, Carter submitted other informal complaints on April 23, 2020, and April 24, 2020, on matters unrelated to the April 9, 2020, incident of which he complains. (*Id.* ¶ 28.)

In response to the defendants' motions, Carter filed many affidavits and briefs. While many of the documents focus on the merits of Carter's claims, with regard to the defendants' exhaustion defense, Carter summarily argues that administrative remedies were not available to him. In support of this assertion, Carter claims that staff at Wallens Ridge have a "history" of denying inmates access to the grievance process. (ECF No. 79, at 3.) He also submits affidavits from other inmates who attest that grievance procedures generally are not followed at Wallens Ridge because staff "delay and hinder" access to the forms by refusing to provide them, losing them in the mail, holding them past the response dates, refusing them at intake, and punishing inmates who submit them. (ECF No. 49-1, at 11–18.)

- 8 -

Carter also alleges that he made a verbal complaint to Lt. Kimberlin on April 10, the day after the incident, and Lt. Kimberlin told him that "the incident was gonna be reviewed," but never advised him of the next appropriate steps he should pursue to grieve the issue.[3] (ECF Nos. 49-1, at 1–2 & 52-1, at 2.)

Carter claims that he requested informal complaint forms several times and that his requests were delayed or denied (ECF Nos. 49, at 3; 49-1, at 2; 49-2, at 5; 82, at 8.) Carter states that he was "locked down" in a segregation cell at the time and had "no control to make staff follow . . . procedures." (ECF No. 52-1, at 1-2.)

The incident at issue occurred on April 9, 2020. Despite Carter's allegations that he was unable to obtain informal complaint forms in a timely manner, there is no dispute that Carter submitted informal complaints on unrelated matters on April 23, 2020, and April 24, 2020; thus, he did have access to informal complaint forms before he filed the relevant informal complaint on May 6. Carter does not explain why he could not have used one of these forms to address his concerns about the April 9, 2020, incidents. There is also no dispute that he did not request informal complaint forms from the grievance office before his time to file the forms expired. *See Harris v. Elam*, No. 7:17cv147, 2020 U.S. Dist. LEXIS 76285, at *8-9 (W.D. Va. Apr. 30, 2020) (finding that grievance procedure was available to an inmate who could have but did not submit written requests for assistance when he failed to receive a receipt for or response to his informal complaints, even though submitting such a request was not required by OP 866.1). Carter submitted the only related informal complaint on May 6, 2020,

---

[3] The court notes that Carter signed an acknowledgement of receipt of Wallen Ridge's orientation packet on September 23, 2019. (*See* ECF No. 50-1, at 47.) The orientation packer outlines the grievance process, including how to obtain forms and where to submit them. (*See* ECF No. 50-1, at 12–15.)

three days before his time to file a regular grievance expired. Under OP 866.1, staff have 15 days to respond to an informal complaint. Staff responded to Carter's relevant informal complaint on May 14, 2020, eight days after he filed it. Although Carter submitted a regular grievance on May 14, the grievance was rejected at intake because it was untimely filed five days after the time to file had expired. Carter received the grievance intake denial on May 15. Under OP 866.1, an inmate may appeal an intake decision within five days of receiving the intake denial. But Carter did not file an appeal of the intake decision until May 23, 2020, three days after his time to appeal expired. The intake decision appeal was rejected as untimely filed. Carter does not explain why his appeal was untimely filed.

Although Carter argues that staff at Wallens Ridge generally do not follow the grievance procedure, he fails to make any factual showing that the grievance procedure was not followed in this case *or* that any deviations had an impact on his ability to exhaust his administrative remedies concerning the claims in this action. "Exhaustion of administrative remedies is mandatory, even where the inmate claims that exhaustion would be futile." *Reynolds v. Doe*, 431 F. App'x 221, 222 (4th Cir. 2011); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); *Akins v. United States*, No. 3:04-23200-MBS-JRM, 2006 U.S. Dist. LEXIS 24256, at *7, 2006 WL 752845, at *2 (D.S.C. Mar. 22, 2006) ("An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement."), *aff'd*, 202 F. App'x 592 (4th Cir. 2006).

Accordingly, the undisputed evidence establishes that Carter failed to exhaust administrative remedies concerning the claims in this action. Further, Carter does not

demonstrate that he was prevented from properly exhausting available administrative remedies "through no fault of his own." Accordingly, the court concludes that remedies were available to Carter. Finding no genuine dispute of material fact on this issue, the court concludes that Carter failed to exhaust available administrative remedies as to his claims raised in this action.

## IV.

For the reasons stated, the court will grant the defendants' motions for summary judgment.[4]

The clerk is directed a forward a copy of this Memorandum Opinion and Order to the parties.

**ENTERED** this 14th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[4] Carter has also filed a motion to amend his complaint to add state-law claims. (ECF No. 84.) The court will decline to exercise supplemental jurisdiction over any such claims and will therefore deny the motion. *See* 28 U.S.C. § 1367(c).